**United States District Court for the District of Massachusetts**

Civil Action # _____

Christopher Hunt, Plaintiff. )
)
vs. )
)
)
Kimberly Hinden, )
Registrar of Motor Vehicles, )
Defendant. )

# MEMORANDUM OF LAW IN SUPPORT OF CHRISTOPHER HUNT'S MOTION FOR A RESTRAINING ORDER

1. <u>FACTS</u>

There is no dispute about the facts in this case. On or about July 8, 2003, after a brief chase by the Arlington police, Hunt was arrested in Arlington for speeding, G.L. 90 Sec. 18, a civil infraction; refusing to stop for a police officer, G.L. 90 Sec. 25; negligent operation, G.L. 90 Sec. 24(2)(a)(1); and driving under the influence of liquor, second offense, G.L. 90 Sec 24(1). Upon being arrested, the Arlington police offered "Hunt the opportunity to submit to a PBT" (Portable Breath Test). Hunt agreed to take the test and registered a .069% BAC (Blood Alcohol Content). Since this result was less than .08%, no inference could be drawn under Massachusetts law to establish that Hunt was driving under the influence of alcohol. See G.L. Ch. 90, Sec. 24(1)(e). A copy of police Incident Report #3013150 is attached hereto as Exhibit D. In a court hearing on March 15, 2004 in Cambridge, Hunt was found not guilty of driving under the influence. He pleaded guilty to driving negligently. See affidavit of Hunt, Exhibit C.

The police report, Exhibit D, included a recommendation that a "*request for immediate threat license suspension / re-revocation*" <u>form</u> should be filed with the Registrar of Motor Vehicles. Sometime in July 2003, the Registrar of Motor

Vehicles suspended/revoked Christopher Hunt's Massachusetts driver's license pursuant to G.L. 90 Sec. 22(a), which provides in relevant part as follows:

> The registrar may suspend or revoke without a hearing . . . any license issued under this chapter whenever the holder thereof has committed *a violation of the motor vehicle laws* of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an *immediate threat* to the public safety. (emphasis added)

The statute further provides that a license suspended pursuant to this provision shall not "be reissued unless, upon examination or investigation, or after a hearing, *the registrar determines that the operator shall again be permitted to operate.*"

Hunt has, on several occasions, requested the Registrar to reinstate or reissue his driver's license which the Registrar suspended pursuant to G.L. Ch. 90, Sec. 22(a). On Friday, September 24, 2004, Hunt appeared before a suspension officer at a branch of the Registry of Motor Vehicles in Lawrence at 9:15 am and requested a hearing. His request was granted. Mr. Hunt was represented, for the first time, by counsel. See Exhibit B, C.

Mr. Hunt, by his attorney, requested that the hearing officer advise him as to the basis of the Registrar's action in suspending his license in July 2003, and he was advised by the hearing officer that the suspension was made pursuant to G.L. Ch. 90, Sec. 22(a) for driving a motorcycle after sundown and before sunset, and with a passenger, which was a violation of the terms of his motorcycle learner's permit. See G.L. Ch. 90, Sec. 8B. At the time of the incident, Mr. Hunt's driver's license did not contain a motorcycle endorsement. However, he did possess a validly issued motorcycle learner's permit pursuant to G.L. Ch. 90, Sec. 8B. See Exhibits B and C.

The undersigned counsel requested details and reasons from the hearing officer for the *continuing* suspension and the nature of the continuing "*immediate threat*", and the hearing officer advised the undersigned counsel, and Mr. Hunt, that all of this was contained in a computer printout which she agreed to print out and give a copy of same to Mr. Hunt and the undersigned counsel. However, the hearing officer set forth that the Registrar's computers were in a slow mode. After waiting thirty minutes for a copy of the printout, it was not forthcoming. Thereupon, the hearing officer advised that she would mail a copy to the undersigned attorney on that day as soon as the Registry's computers could print out the record. She addressed an envelope to the undersigned counsel at his office in Belmont, Massachusetts. See Exhibit B.

The undersigned counsel requested that the suspension officer reinstate Mr. Hunt's license immediately. This request was denied. Whereupon, the hearing concluded. See Exhibit B.

The undersigned counsel never received the computer printout from the Lawrence suspension officer. He did attempt to reach the suspension officer by telephone approximately ten days after the hearing, but was advised by a Registry official that they would not give out telephone numbers for the suspension officers at the Lawrence branch of the Registry of Motor Vehicles.

On September 30, 2004, the undersigned counsel wrote the Registrar and requested that the Registrar reinstate Mr. Hunt's drivers license forthwith, and that the Registrar's action in refusing to reinstate or reissue Mr. Hunt's driver's license was a violation of the Fourteenth Amendment of the United States Constitution. See Exhibit A.

3

The undersigned counsel also requested the Registrar to provide forthwith "a copy of the record relating to your initial suspension and *continuing* suspension of Mr. Hunt's right to drive in Massachusetts," including the "request for *immediate threat,* license suspension/revocation" form that might have been filed by the Arlington police with the Registrar. The undersigned counsel included a request for a copy of the computer printout which the Lawrence suspension officer on September 24, 2004 promised to mail to the undersigned counsel. See Exhibit B.

Counsel further requested the following: "Please state any additional reasons or basis relating to your *continuing* refusal to reinstate Mr. Hunt's right to drive and [his] Massachusetts driver's license above and beyond those set forth by the suspension officer on September 24, 2004, i.e. driving a motorcycle after sunset and before sundown with a passenger." See Exhibit A. The Registrar never responded to the undersigned counsel's September 30, 2004 letter. See Exhibit B.

2. <u>THE REGISTRAR'S ACTION IN CONTINUING TO SUSPEND HUNT'S DRIVER'S LICENSE INDEFINITELY VIOLATES THE FOURTEENTH AMENDMENT</u>

Hunt maintains that this Court should issue a restraining order because the loss of his driver's license cannot be undone by any final judgment that is issued by this Court. Hunt needs his driver's license in the course of his employment, Exhibit C, and its loss will cause him irreparable injury. The Registrar will not be prejudiced if Hunt's license is returned to him on a temporary basis as he may meter out an additional suspension period with respect to Hunt's driver's license in the event that the Registrar prevails in this action[1]. There is a far less risk to the public than there would be with respect to the driver who is convicted of

---

[1] This assumes the Registrar does not intend to continue Hunt's suspension for the rest of his life. It should also be noted that Hunt did not cause any injury to persons or property.

4

driving under the influence which carries a statutory one year suspension, or if a motorist goes into a alcohol rehabilitation program, Ch. 90, Sec. 24D, a ninety day suspension. Further, Hunt is only requesting this Court to reinstate his driver's license. He does not ask this Court to reinstate his motorcycle learner's permit. As such, he will not be able to drive his motorcycle until the final resolution of this action. Hunt also has set forth in his affidavit, Exhibit C, that he will obey all Massachusetts Motor Vehicle Laws if this Court grants his motion for a restraining order and his license is reinstated by the Registrar.

In short, the real issue before this Court is what are Hunt's chances for success on his Complaint. Hunt maintains that there is a substantial probability that he will prevail on the merits. In furtherance for his position, Hunt sets forth that there is basically no factual dispute for this Court to resolve, but rather only issues of law. The legal issues presented by Hunt's complaint are as follows:

1. Is the Registrar's action in *continuing* to suspend his driver's license arbitrary, capricious, vexatious or irrational?

2. Is Ch. 90, Sec. 22(a) unconstitutional as applied to Hunt?

3. Are the re-issuance provisions of Ch. 90, Sec. 22(a) void for vagueness?

4. Does the Registrar's refusal to state his reasons and his position for refusing to reissue or reinstate Hunt's driver's license violate the due process provisions of the Fourteenth Amendment?

G.L. 90, Section 22(a) provides that the Registrar may revoke a motorists driver's license whenever a motorist has committed "*a violation of the motor vehicle laws*" of a nature which would give the Registrar reason to believe the continuing operation by such motorist would be so seriously improper as to constitute "an immediate threat" to the public safety. Initially, it should be observed that there can be no question today that the right to drive is a liberty and property interest protected by the Fourteenth Amendment. See Wall v. King, 206 F.2d 878, 881-882 (First Circuit 1953); Raper v. Lucey, 488 F.2d 748, 752-754 (First Circuit

5

1973). Hunt does not address the issue at this point in time as to whether the Registrar was justified in revoking his license pursuant to Sec. 22(a) in July 2003 for driving his motorcycle after sunset and before sunrise, and with a passenger. Rather, he directs this Court's attention to the fact that the Registrar has continued the suspension of his driver's license for well over a year, and is *continuing* to suspend his license *indefinitely* solely on the basis of Hunt's driving his motorcycle in July 2003 after sunset and before sunrise, and with a passenger in violation of his motorcycle learner's permit issued pursuant to Ch. 90, Sec. 8(B).

The Registrar's position is difficult, if not impossible, to understand. Indeed, it is incomprehensible how such "*an immediate threat*" to the public safety from violating the sunset provisions of Ch. 90, Sec. 8(B) can *continue ad infinitum*. Nor has the Registrar articulated what action Hunt must take to have his driver's license reinstated or reissued. Nor has the Registrar stated any reasons to justify or explain any *continuing* "*immediate threat*" to the public safety.

More specifically, the Registrar's action in suspending a motorist's license under Sec 22(a) must be predicated *on the violation of one of Massachusetts' motor vehicle laws*. The statute, however, does not specify the length of time of such suspension. By way of comparison, the Massachusetts legislature has set forth specific punishments "*for violation of [its] motor vehicle laws*", quite apart from the provisions of Sec. 22(a). For example, a violation for a first offense for driving under the influence of intoxicating liquor is a one year suspension, see Ch. 90, Sec. 24(1)(a). If there is no personal injury related to the commission of this offense, a motorist is eligible to go into an alcohol rehabilitation program with only a ninety day loss of his driver's license pursuant to Ch. 90, Sec. 24(D). The suspension for driving to endanger is sixty days, see Ch. 90, Sec. 24(2)[2].

---

[2] There was no personal injuries or property damage involved with Hunt's violation of the Massachusetts' motor vehicle laws.

6

Failure to stop for a police officer carries a $100 fine under Ch. 90, Sec. 25. On the other hand, the legislature has not set forth a penalty for violation of Ch. 90, Sec. 8(B) for driving after sunset and before sunrise, or with a passenger, for the motorist who only has a learner's motorcycle permit. Ch. 90, Sec. 20 is a dragnet provision which does provide that where no specific penalty is imposed, a fine is prescribed and it would appear that the fine for violation of Ch. 90, Sec. 8(B) would be $35 for the first offense. However, it would also appear that a violation of Sec. 8(B) is a civil infraction under Ch. 90C, Sec. 1, 3. When Massachusetts's statutory scheme relating to its Motor Vehicle Laws is viewed in total, it is clear that the Registrar's continued and *indefinite* suspension of Hunt's license way beyond the specific time limits relating to each violation of the motor vehicle laws by Hunt, and under the guise of Ch. 90, Sec. 22(a), is arbitrary, vexatious, and capricious.

Alternatively, Sec. 22(a) may be construed as meaning that the Registrar may continue to suspend a motorists' license until he makes a determination that there is no continuing *immediate threat* to the public safety. If this is the case, Hunt maintains that the Registrar has the burden of establishing *a continuing immediate threat*. Hunt maintains that the Registrar has not made a determination that there exists *a continuing immediate threat*, nor has he given Hunt any notice of such determination or an opportunity to respond. Indeed, the sole basis for the continuing suspension of Hunt's license that was professed by the suspension office at the September 24, 2004 hearing in Lawrence was that Hunt had violated the sunset provisions of his learner's permit on July 8, 2003. See Exhibits B and C.

Hunt also maintains that Ch. 90, Sec. 22(a) is vague in that it does not prescribe any criteria or set any standards, nor has the Registrar established or promogated any, to establish when, why, or how a motorist's license should be reissued, or to explain the meaning of the words in the statute that provide that

7

a motorist's license should not be reissued unless the Registrar determines "that the operator shall again be permitted to operate". In the absence of any such standards, criteria, regulations, or guidelines, Hunt maintains that the subject statute is void for vagueness and that the application of this statute in the absence of standards, criteria, regulations, or guidelines makes the application of the statute by the Registrar, arbitrary, vexatious and capricious.

Hunt's position is supported by the First Circuit's decision in Raper v. Lucey, Registrar of Motor Vehicles, 488 F.2d 748 @ p. 753 (1973):

> Reasons for governmental action affecting important individual rights must be timely proffered in order to satisfy due process. See Board of Regions v. Roth, supra (termination from state employment); Goldberg v. Kelly, supra (termination of welfare benefits); . . . . The government has not advanced any appropriate interest that would be served by its refusal to detail reasons. . . . . . Moreover, by compelling the Registrar [of Motor Vehicles] to indicate a specific basis for his action, we minimize the possibility of arbitrary or unreasoned administrative judgment. A statement of reasons may best serve as an important safeguard against abuse unwarranted of the Registrar's statutory discretion in approving or disapproving license applications. (footnotes omitted)

Hunt believes that what was said in Raper is equally applicable today in his case. Although the Registrar has explained that his initial suspension was based on Hunt's violation of his motorcycle learner's permit, he has set no reasons to support his *continuing* indefinite suspension of Hunt's driver's license. Quite apart from this consideration, the First Circuit also held in Raper that the failure of an administrative body "to publish *existing* policies and regulations" or "current substantive criteria which will govern" the administrative body's decisions is a violation of the due process requirements of the Fourteenth Amendment. Although the Registrar has published regulations, 9 C.M.R. 9.01-9.05, none of these regulations set forth "the current substantive criteria" which

8

will govern the Registrar's actions in reissuing or reinstating a motorist's driver's license after it has been suspended to Sec. 22(a). Further, it is clear that the Registrar has refused Hunt's request that he state his reasons for continuing to reissue or reinstate his driver's license. See Exhibits A and B. Accordingly, Hunt maintains that Sec. 22(a) as applied to him, is unconstitutional.

CONCLUSION

For the foregoing reasons, we request this Court to issue a temporary restraining order reinstating Hunt's driver's license in Massachusetts.

Date: October 26, 2004

Christopher Hunt
by his attorney

_____
Robert W. Hagopian, Esquire
P.O. Box 282
Belmont, MA 02478
BBO# 216580