UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



NO. 04-CV-12291-EFH

CHRISTOPHER HUNT,

Plaintiff,

v.

KIMBERLY HINDEN, Registrar of Motor
Vehicles, Commonwealth of Massachusetts,

Defendant.

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Commonwealth defendant, the Registrar of Motor Vehicles ("Registrar"), opposes the motion for preliminary relief filed by plaintiff Christopher Hunt ("Hunt"). Hunt alleges that the Registrar violated his constitutional rights by revoking his driver's license under the "immediate threat" statute, M.G.L. c. 90, § 22(a). Hunt seeks an order directing the Registrar to reinstate his driving privilege. Hunt has no likelihood of success on the merits because this action is barred by principles of res judicata and because Hunt's constitutional claims are meritless. Moreover, the balance of harms tips sharply in favor of Registrar, who revoked Hunt's license to protect the public from Hunt's dangerous driving. Accordingly, Hunt's motion for preliminary relief should be denied.

## FACTUAL, PROCEDURAL, AND STATUTORY BACKGROUND

Hunt is 28 years old and has been licensed to drive a car since April 12, 1993. See

Exhibit A ("license transaction history" for Hunt's license).[1]  In that 11-year period he has amassed 18 guilty or responsible findings for violations of the motor vehicle laws. These violations include speeding, driving without insurance, operating under the influence ("OUI"), and refusal to take a Breathalyzer test. See Exhibit B (Hunt's driving record).

On July 8, 2003, at about 11:00 p.m., a radar gun operated by a Town of Arlington police officer clocked Hunt driving a motorcycle at 88 miles per hour in a posted 30-mile-per-hour zone. The officer gave chase in a marked cruiser with its blue lights activated. Hunt slowed somewhat but continued to travel fast enough that sparks shot from the motorcycle. A second officer, also in a marked cruiser with emergency equipment activated, joined the chase. Hunt would not stop even as the second officer traveled directly behind him. Hunt continued to speed along, running stop signs and at one point driving on the sidewalk. Finally, Hunt pulled into a driveway and stopped. At this point, the arresting officer noticed that Hunt was traveling with a passenger. See Exhibit C (Town of Arlington police report).

Hunt produced a Class D automobile driver's license. However, for operating a motorcycle, he had only a learner's permit, which does not permit operation between sunset and sunrise or with a passenger. The arresting officer smelled alcohol on Hunt's breath and noticed that his eyes were bloodshot and that he was unsteady on his feet. Hunt admitted to having "a few beers." In a field sobriety test, Hunt displayed the maximum six clues. In a portable blood-alcohol test ("PBT"), Hunt registered a .069 percent blood alcohol content. Hunt was arrested and brought to the police station. He refused to take a Breathalyzer test. A records check

---

[1]     All Registrar records attached hereto are authenticated as true copies by the Affidavit of Andrew M. Padellaro, attached hereto as Exhibit H. The attached affidavit has a faxed signature; the original affidavit will be submitted as soon as possible.

revealed that Hunt was on probation for a previous OUI offense.  See Exhibit C.

The arresting officer charged Hunt with four criminal offenses: OUI-liquor, second offense, see M.G.L. c. 90, § 24; refusing to stop for police, see M.G.L. c. 90, § 25; operating to endanger, see M.G.L. c. 90, § 24; and operating without a valid license, see M.G.L. c. 90, § 10. Hunt was also cited for a speeding, a civil violation.  See Exhibit D (citations).

The next day, July 9, 2003, the arresting officer filed with the Registrar a "Request for Immediate Threat License Suspension / Revocation" form.  The form summarized the July 8, 2003, incident and attached a copy of the police report and citations.  See Exhibit E.

Upon receiving the arresting officer's report and reviewing the Registrar's computerized records, a Registrar hearing officer determined that Hunt's automobile driver's license should be revoked immediately and indefinitely under M.G.L. c. 90, § 22(a).  See Exhibit F (Registry of Motor Vehicles Immediate Threat Revocation Form).  That statute provides, in part, as follows:

> The registrar may suspend or revoke without a hearing any certificate of registration or any license issued under this chapter whenever the holder thereof has committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety. . . . [N]either the certificate of registration nor the license shall be reissued unless, upon examination or investigation, or after a hearing, the registrar determines that the operator shall again be permitted to operate.

M.G.L. c. 90, § 22(a).  The statute allows for license suspension for an indefinite period as a non-punitive, remedial measure to protect the public from dangerous drivers.  See Powers v. Commonwealth, 426 Mass. 534, 537-40, 694 N.E.2d 324, 326-29 (1998).

On July 14, 2003, the Registrar mailed to Hunt a notice of revocation under M.G.L. c. 90, § 22(a), effective July 12, 2003.  The notice notified Hunt that the revocation stemmed from the July 8, 2003, incident in Arlington and that he could request a hearing at the Registry.  See

3

Exhibit G. The Registrar's records indicate that Hunt did not request a hearing before the

Registrar until September 24, 2004. See Exhibit H (Affidavit of Andrew M. Padellaro).

On April 15, 2004, Hunt requested a hearing before the Board of Appeal on Motor

Vehicle Liability Policies and Bonds ("Board of Appeal"). See Exhibit I (appeal form).[2] The

Board of Appeal, which is not named as a defendant in the instant case, is a distinct state agency

from the Registrar. The Board of Appeal may affirm, modify, or annul any action by the

Registrar. See M.G.L. c. 90, § 28; Registrar of Motor Vehicles v. Board of Appeal on Motor

Vehicle Liab. Policies & Bonds, 382 Mass. 580, 584, 416 N.E.2d 1373, 1376 (1981).

On July 22, 2004, the Board of Appeal held an adjudicatory hearing. See Exhibit J

(notice of hearing). The participants were Hunt and a representative from the Registry. That

same day, the Board of Appeal issued a Finding and Order affirming the Registrar's revocation

of Hunt's license as an immediate threat. The Board of Appeal further stated that Hunt must

wait until January, 2005, to reapply to the Board for his license. The Finding and Order advised

Hunt that he had 30 days to appeal the decision to Massachusetts Superior Court under the

Massachusetts Administrative Procedures Act, M.G.L. c. 30A, § 14. See Exhibit K (Finding and

Order). Hunt did not appeal. See Exhibit L (Affidavit of Jeanne Koehr).

On November 4, 2004, the Board of Appeal issued a Statement of Reasons for its July 22,

2004, decision.[3] The Board found that Hunt remained a threat to public safety because of the

---

    [2]     All Board of Appeal records attached hereto are authenticated as true copies by the Affidavit of Jeanne Koehr, attached hereto as Exhibit L. The attached affidavit has no signature; the original signed affidavit will be submitted as soon as possible.

    [3]     Due to the large number of driver appeals heard by the Board of Appeal, the Board's practice is to issue a statement of reasons for a decision only if its finding and order is challenged. For that reason, the Board did not immediately issue a statement of reasons in this

egregiousness of the July 8, 2003, motorcycle incident, because Hunt's long history of motor

vehicle violations demonstrated that he had little respect for the law of the Commonwealth, and

because Hunt admitted to the Board of Appeal hearing officer that he continued to drink and did

not feel he had a problem with alcohol.  See Exhibit M (Statement of Reasons).

On September 24, 2004, Hunt appeared at a Registry branch seeking reinstatement of his

license.  A hearing officer referred Hunt back to the Board of Appeal.  Under the circumstances

of this case, Hunt can no longer seek reinstatement from the Registrar and must instead continue

to seek reinstatement from the Board of Appeal.  See Exhibit N (computer file notes of hearing

officer).  Thereafter, Hunt sued the Registrar in this Court under 42 U.S.C. § 1983.

<div align="center">

**ARGUMENT**

</div>

I.   HUNT HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE HIS
     CLAIMS ARE BARRED UNDER PRINCIPLES OF RES JUDICATA AND ARE IN
     ANY EVENT MERITLESS.

Hunt's motion should be denied because he has demonstrated no likelihood of success on

the merits, the "sine qua non" of the four-part preliminary-injunction inquiry.  See New Comm

Wireless Svcs. v. Sprintcom, 287 F.3d 1, 9 (1st Cir. 2002).  First, this action is barred under

principles of res judicata.  Second, Hunt's due process claims are meritless.

A.   This Action Is Barred Under Principles of Res Judicata.

At Hunt's request, the Commonwealth's Board of Appeal on Motor Vehicle Liability

Policies and Bonds held an adjudicatory hearing on Hunt's "immediate threat" status just three-

and-a-half months ago.  Exhibits J, K, L, M.  On July 22, 2004, the Board determined that, as of

that date, Hunt remained "an immediate threat to public safety" under M.G.L. c. 90, § 22(a), and

---

case.

that Hunt must wait until January, 2005, to reapply for his license.[4] Exhibits K, M. Hunt did not appeal the Board's decision to Massachusetts Superior Court, and is now time-barred from doing so. Exhibit L; see M.G.L. c. 30A, § 14(1) (authorizing appeal within 30 days of agency decision); Friedman v. Board of Registration in Medicine, 414 Mass. 663, 664-66, 609 N.E.2d 1223, 1224-25 (1993). Instead, Hunt sought redress in federal court raising issues and claims that he either already raised, or could have and should have raised, in the state proceedings. This he may not do.

The doctrines of claim and issue preclusion apply to actions brought under 42 U.S.C. § 1983. University of Tennessee v. Elliott, 478 U.S. 788, 796-98 (1986); Migra v. Warren City School Dist., 465 U.S. 75 (1984); Allen v. McCurry, 449 U.S. 90 (1980); Casagrande v. Agoritsas, 748 F.2d 47, 48 (1st Cir. 1984) (per curiam). The federal courts must apply state law in determining the extent of preclusion. Migra, 465 U.S. at 81; Casagrande, 748 F.2d at 48. "Massachusetts courts apply res judicata in 'a perfectly traditional manner.'" Casagrande, 748 F.3d at 48 (quoting Isaac v. Schwartz, 706 F.2d 15, 16 (1st Cir. 1983)). Of particular relevance to this case, under Massachusetts law "the doctrine [of res judicata] has been applied in both its prongs to the decisions of administrative agencies and covers unappealed agency final orders." See Conservation Comm'n of Falmouth v. Pacheco, 49 Mass. App. Ct. 737, 741-42 & n.5, 733 N.E.2d 127, 130-31 & n.5 (2000) (collecting cases); see also Almeida v. Travelers Ins. Co., 383 Mass. 226, 230, 418 N.E.2d 602, 605 (1981) (giving preclusive effect to a determination by the Board of Appeal on Motor Vehicle Liability Policies and Bonds; noting that "it would be

[4] Because the Board heard the case, the Registrar referred Hunt back to the Board because at this point the Board, not the Registrar, is the Commonwealth agency that will decide when to reinstate Hunt's license. Exhibit N.

anomalous if a party were entitled to assume a better position by not appealing the adverse

decision of the board"); Brunson v. Wall, 405 Mass. 446, 450-51, 541 N.E.2d 338, 340-42

(1989) (giving preclusive effect to decision of Massachusetts Commission Against

Discrimination in de novo civil action in Massachusetts Superior Court alleging violation of

M.G.L.c. 151B, § 4, and 42 U.S.C. §§ 1981 and 1983 arising from the same factual situation);

but see Pereira v. Commissioner of Social Svcs., 432 Mass. 251, 252-53 & n.3, 265, 733 N.E.2d

112, 114 & n.3, 123 (2000) (addressing, and rejecting, plaintiff's 42 U.S.C. § 1983 claim despite

fact that plaintiff had failed to appeal administrative decision under M.G.L. c. 30A).

     "[R]es judicata precludes litigation not only of those claims which were actually litigated,

but also of claims which could have been presented in the first action." Casagrande, 748 F.2d at

49. Hunt could have raised his constitutional claims before the Board of Appeal, or, if the claims

did not ripen until after the Board acted, he could have raised them on appeal to Massachusetts

Superior Court under the Massachusetts Administrative Procedures Act. See M.G.L. c. 30A,

§ 14(7)(a). Hunt could also have included in any M.G.L. c. 30A complaint in state court a count

under 42 U.S.C. § 1983. See Stratos v. Department of Public Welfare, 387 Mass. 313, 316-18,

439 N.E.2d 778, 782-84 (1982). Hunt's decision not to appeal the Board's July 22, 2004, ruling

"may not now provide a justification for bringing a separate federal court action." See

Casagrande, 748 F.2d at 49 (barring section 1983 action because plaintiff could have included a

section 1983 claim in his state-court appeal of agency's decision); see also Plough by Plough v.

West Des Moines Community School Dist., 70 F.3d 512, 517 (8th Cir. 1995) (recognizing claim

preclusion where plaintiff failed to seek state-court review of agency decision); Valley Wood

Preserving, Inc. v. Paul, 785 F.2d 751 (9th Cir. 1986) (same).

Even if claim preclusion somehow does not apply to this case, at the very least issue preclusion will seriously hinder Hunt's chances of success on the merits of his constitutional claims. When a state agency "acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Elliott, 478 U.S. at 798. Here, Hunt's claims of arbitrary action and an impermissibly vague statute are inextricably bound up with the factual findings the Board of Appeal made in connection with its July 22, 2004, decision. Because Hunt never appealed the Board's decision, these findings are conclusive under Massachusetts law. See Almeida, 383 Mass. at 230, 418 N.E.2d at 605. In sum, principles of res judicata bar the instant action, or at the very least make it unlikely that Hunt can succeed on the merits of his constitutional claims.

B.      Hunt's Constitutional Claims Are Meritless.

Hunt does not challenge the Registrar's initial revocation of his license effective July 12, 2003, or the immediate-threat statute's post-revocation hearing procedure. Rather, Hunt alleges that the continued suspension of his license -- presumably as of September 24, 2004, when Hunt went to the Registry to seek reinstatement -- violates due process in various ways. The claims are meritless.

1.      The Continued Suspension of Hunt's License Is Lawful and Reasonable.

On July 22, 2004, after an adjudicatory hearing that Hunt requested, the Board of Appeal found that Hunt remained a threat to public safety because of the egregiousness of the July 8, 2003, motorcycle incident, because Hunt's long history of motor vehicle violations demonstrated that he has little respect for the law of the Commonwealth, and because Hunt admitted that he

8

continued to drink and did not feel he had a problem with alcohol.  Exhibits K, L, M.  The Board

also decided that Hunt must wait until January, 2005, to reapply to the Board.  Exhibits K, M.

Furthermore, because the Board heard and ruled on Hunt's immediate-threat status, at this point

the Board, not the Registrar, is the Commonwealth agency that will decide when to reinstate

Hunt's license.  Exhibit N.  According to the records of the Registrar, a Registry official referred

Hunt back to the Board of Appeal when Hunt sought reinstatement from the Registrar on

September 24, 2004.  Exhibit N.  These actions of the Registrar and the Board of Appeal were

lawful and reasonable.  See M.G.L. c. 90, § 22(a); Powers, 426 Mass. at 537-40, 694 N.E.2d at

326-29 (recognizing that immediate threat statute allows for indefinite license revocation as

means to protect the public); Andonian v. Registrar, 29 Mass. App. Ct. 942, 943, 558 N.E.2d

1005, 1006-07 (rescript) (one citation for failure to stop may constitute immediate threat to

public safety); see also Wall v. King, 206 F.2d 878, 883-84 (1st Cir. 1953) (upholding

Massachusetts immediate threat statute against due process challenge).  They were not, as Hunt

claims, so "arbitrary, capricious, vexatious [and] irrational" as to violate due process.

   While Hunt does not elaborate on this claim, suffice it to say that he cannot satisfy either

of the two theories that the First Circuit recognizes for substantive due process arguments:

> Under the first [theory], a plaintiff must demonstrate a deprivation of an identified
> liberty or property interest protected by the Fourteenth Amendment.  Under the
> second, a plaintiff is not required to prove the deprivation of a specific liberty or
> property interest, but, rather, he must prove that the state's conduct "shocks the
> conscience."

See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 622 (1st Cir. 2000).

   The "shock the conscience" approach requires that the "state action . . . be egregiously

unacceptable, outrageous, or conscience shocking," Amsden v. Moran, 904 F.2d 748, 754 (1st

9

Cir. 1990), such as forced stomach-pumping or using a "penile plethysmograph as a condition of [job] reinstatement," Cruz-Erazo, 212 F.3d at 623. The actions of the Registrar and Board of Appeal in this case -- taken as they were to protect the public from Hunt's dangerous driving -- plainly do not satisfy the First Circuit's "conscience-shocking" standard. See id. at 618-23 (describing various First Circuit cases where Court declined to find "conscience-shocking" action).

The other substantive due process approach applies only to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." See Washington v. Glucksburg, 521 U.S. 702, 719-20 (1997) (internal quotation marks and citations omitted); see also Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir. 1991). Substantive due process protection does not "embrace all state-created property interests entitled to procedural due process protection." See Santiago de Castro, 943 F.2d at 131. Here, while a driver's license may be a liberty interest entitled to procedural due process protection, see Wall, 206 F.2d at 882, it falls well short of being a "fundamental" right protected by substantive due process. In sum, to the extent Hunt makes a substantive due process claim, it is meritless.

        2.      Hunt Received All the Process That Was Due.

Hunt, by citing Raper v. Lucy, 488 F.2d 748 (1st Cir. 1973), appears to argue that his procedural due process rights were violated when the Registrar refused to reinstate his license on September 24, 2004. The claim has no merit.

The due process clause is "flexible and calls for such procedural protections as the

10

particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (internal

quotation marks omitted); see Penobscot Air Service Ltd. v. FAA, 164 F.3d 713, 723 (1st Cir.

1999). In deciding how much process is due in any given situation, courts should consider:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

Matthews, 424 U.S. at 335. Notice and a meaningful opportunity to be heard are the primary due

process protections applicable when state agencies act adversely to citizens. Id. at 333.

Under these standards, Hunt received all the process that was due. The overarching

problem with Hunt's argument is that it ignores the July 22, 2004, hearing before the Board of

Appeal, which Hunt requested and at which he participated. Exhibits J, K, L, M. At that

hearing, Hunt had the opportunity to submit exhibits, present witnesses, and testify himself. See

M.G.L. c. 90, § 28; M.G.L. c. 26, § 8A; Registrar of Motor Vehicles, 382 Mass. at 584 ("[i]n the

case of an appeal from a discretionary ruling by the registrar, we have construed the word

'appeal' in s. 28 as providing for a new trial on all issues and a full hearing on the merits in no

way limited or restricted by what had occurred at the previous hearing before the registrar")

(internal quotation marks omitted) . When Hunt sought to avoid the Board's ruling (and his

failure to appeal it) by seeking relief from the Registrar prior to January, 2005, a Registry official

properly informed Hunt that his only avenue was through the Board. Exhibit N.

Due process does not require that, where the Board of Appeal deemed Hunt an immediate

threat as of July 22, 2004, the Board must continuously reevaluate that finding. Rather, to ensure

public safety as well as to ease administrative burdens, the Board of Appeal properly determined

11

that Hunt must wait six months before reapplying. Thus, Hunt is wrong to seize on the

"immediate" language of the statute as proof that a year-old incident cannot be the basis for

continued license revocation under M.G.L. c. 90, § 22(a). A license may remain revoked under

M.G.L. c. 90, § 22(a) where "continuing operation by [the] holder is and will be so seriously

improper as to constitute an immediate threat to public safety." See M.G.L. c. 90, § 22(a)

(emphasis added); see also Powers, 426 Mass. at 537-40, 694 N.E.2d at 326-29 (recognizing that

immediate threat statute allows for indefinite license revocation as means to protect the public).

   Furthermore, Hunt's reliance on Raper, supra, where the First Circuit held that due

process violations occurred, is misplaced. There, the Registrar refused to issue a license to 16-

year-old Raper, and then continued to reject Raper's license applications for 10 years, stating as

a reason only that "it did not appear advisable" to do so. Raper, 488 F.2d at 750. When Raper

appealed to the Board of Appeal, the Board, without prior notice, advised Raper it would not

hear the appeal until Raper produced permission letters. Id. When Raper submitted the letters,

the Registrar and the Board did nothing for "several months," leading Raper to sue in federal

court for procedural due process violations. Id. at 750-51. The circumstances of this case --

involving years of moving violations and exceedingly dangerous driving in July, 2003 -- are

plainly not like those in Raper. In sum, Hunt's procedural due process claim is meritless.

   3.   The Immediate Threat Statute Is Not Impermissibly Vague.

   Finally, Hunt contends that the license reinstatement provisions of M.G.L. c. 90, § 22(a)

are "void for vagueness." The claim fails.

   As an initial matter, while the void for vagueness concept has been extended to civil

statutes, it is primarily concerned with statutes that define criminal conduct. License revocation

12

by the Registrar under M.G.L. c. 90, § 22(a) and similar statutes is not a criminal penalty. It is a nonpunitive, remedial measure designed to protect the public from dangerous drivers. See Powers, 426 Mass. at 537-40, 694 N.E.2d at 326-29; Luk v. Commonwealth, 421 Mass. 415, 423-30, 658 N.E.2d 664, 669-73 (1995); see also Wall, 206 F.2d at 883-84.

Furthermore, the reinstatement standard is not, as Hunt suggests, simply that "the registrar determines that the operator shall again be permitted to operate." See M.G.L. c. 90, § 22(a). A commonsense reading of the statute -- as well as the requirement of an "examination" or "investigation" or "hearing" before reinstatement -- shows that the standard is the same as that for the initial revocation: whether there is "reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety." See M.G.L. c. 90, § 22(a).

A law is void for vagueness only if its terms are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Construction Co., 269 U.S. 385, 391 (1926). Because M.G.L. c. 90, § 22(a) does not implicate First Amendment freedoms, Hunt's vagueness challenge "'must be examined in the light of the facts of the case at hand.'" See United States v. Powell, 423 U.S. 87, 92 (1975) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)). In other words, Hunt must show that reasonable persons must necessarily guess at whether Hunt's lengthy history of motor vehicle violations, his egregious conduct during the July 8, 2003, motorcycle incident, and his testimony at the July 22, 2004, Board of Appeal hearing that he was still drinking and felt he did not have a problem with alcohol show that Hunt's operation of a motor vehicle would pose a threat to public safety.

The Supreme Court and the First Circuit have repeatedly rejected vagueness challenges to catch-all provisions. See Arnett v. Kennedy, 416 U.S. 134, 169 (1974) (statute that authorized removal of employee "for such cause as will promote the efficiency of the service" not impermissibly vague); Dixon v. Love, 431 U.S. 105, 115-16 (1977) (for license revocation statute similar to M.G.L. c. 90, § 22(a), Court regards "the [vagueness] claim, in the light of [the driver's] record, as frivolous"); Brasslett v. Cota, 761 F.2d 827, 837-38 (1st Cir. 1985) (town charter that authorizes sanctions in any situation "of such seriousness that disciplinary action is considered warranted" not impermissibly vague) . In Arnett, the Supreme Court "stressed the impracticability of formulating an exhaustive list of actionable conduct, and the correlative need for a general removal provision." Brasslett, 761 F.2d at 838. In view of these holdings and the facts of this case, Hunt cannot meet the void for vagueness standard, and his claim must fail.

II.     HUNT FAILS TO ESTABLISH THE OTHER NECESSARY ELEMENTS FOR
        PRELIMINARY RELIEF.

Besides having no likelihood of success on the merits, Hunt's motion for preliminary relief should be denied because he has failed to demonstrate the remaining three prerequisites for a preliminary injunction: (1) "a significant risk of irreparable harm if the injunction is withheld; ([2]) a favorable balance of hardships; and ([3]) a fit (or, at least, a lack of friction) between the injunction and the public interest." See EEOC v. Astra USA, Inc., 94 F.3d 738, 742 (1st Cir. 1996).

Any hardship to Hunt must be balanced against the Commonwealth's interest in protecting its citizens from dangerous drivers. See Wall, 206 F.2d at 883; Powers, 426 Mass. at 537-40, 694 N.E.2d at 326-29. The Board of Appeal found that Hunt's hardship was minimal because he could bicycle to and from work and that he was in no danger of losing his job.

14

Exhibit M. Under the circumstances, the balance of harms tips sharply in favor of the Registrar, and an injunction would harm the public interest. Hunt's motion for preliminary relief should be denied.

## CONCLUSION

For all of these reasons, the Commonwealth defendant respectfully requests that plaintiff's motion for preliminary relief be DENIED.

Respectfully submitted,

KIMBERLY HINDEN, REGISTRAR OF MOTOR VEHICLES, COMMONWEALTH OF MASSACHUSETTS

By her attorney,

THOMAS F. REILLY
ATTORNEY GENERAL

Victoria S. Cole
BBO # 654996
Assistant Attorney General
Government Bureau
One Ashburton Place, Rm. 2019
Boston, MA 02108-1698
(617) 727-2200, ext. 2083

DATE: November 8, 2004

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand)

15