United States District Court for the District of Massachusetts

Civil Action # 04-CV-12291-EFH

| | |
|---|---|
| Christopher Hunt, Plaintiff. | ) |
| | ) |
| vs. | ) |
| | ) |
| Kimberly Hinden, | ) |
| Registrar of Motor Vehicles, | ) |
| <u>Defendant.</u> | ) |

# SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HUNT'S REQUEST FOR A RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

<u>INTRODUCTION</u>

On November 8, 2004, the Registrar faxed sixty-three pages of exhibits to the undersigned attorney in support of her Opposition to Hunt's request for a restraining order and preliminary injunction. For the reasons set forth below, Hunt maintains that these exhibits support his request for a restraining order and preliminary injunction.

Copies of the Registrar's exhibits referenced herein are attached hereto for the convenience of the Court.

<u>1.</u>  <u>HUNT'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT WERE VIOLATED BY THE REGISTRAR'S WITHHOLDING OF THE SUBJECT EXHIBITS</u>

In Hunt's Verified Complaint, he sets forth that he had a hearing on September 24, 2004 with a suspension officer of the Registry of Motor Vehicles in Lawrence, Massachusetts. At that hearing, he requested records of the Registrar's action in continuing to suspend his license, and as to why the Registrar would not reissue

him a license pursuant to G.L. Ch. 90, Sec. 22(a). At that time, the suspension officer advised Hunt that the computers were in a slow mode and that she would obtain the records which he requested and mail them to the undersigned attorney on that day. Indeed, she prepared an envelope that was addressed to the undersigned attorney at the hearing. However, these records were never received by the undersigned attorney. See ¶ 8-13 of Hunt's Verified Complaint. The presumption is that the suspension officer never sent them. Subsequently, on September 30, 2004, Hunt's attorney faxed and mailed a letter to the Registrar advising her that he had been promised a copy of a computer printout detailing the Registrar's actions in suspending, and refusing to reissue, Hunt's license pursuant to Sec. 22(a) by the suspension officer in the Lawrence branch of the Registry of Motor Vehicles, and that he had not received this printout. Hunt's attorney reiterated his request for a copy of the printout plus other records surrounding the indefinite suspension of Hunt's license pursuant to Sec. 22(a). Hunt also faxed and mailed a copy of this letter to the Registrar's counsel. See ¶ 8-14 of Hunt's Verified Complaint and Exhibit A attached thereto. In this letter, Hunt advised the Registrar that if the Registrar did not produce a copy of the record, including a statement of reasons, surrounding the Registrar's refusal to reissue his license pursuant to Sec. 22(a), that he would file a complaint in the federal district court of Boston. Hunt waited until October 28, 2004 for these documents, and having not received them, he filed his Verified Complaint in the above entitled action. At this time, he also faxed a copy of his

Verified Complaint and supporting memorandum of law to the Registrar and the Registrar's counsel. It was not until November 8, 2004 that the Registrar turned over the subject sixty-three pages of exhibits which the Registrar filed in this Court.

It is very clear from these facts that the Registrar deliberately withheld the subject 63 pages of exhibits from Hunt, and that the withholding of these documents was a gross violation of Hunt's due process rights under the Fourteenth Amendment. In *Raper v. Lucey*, 488 F.2D 748 (First Circuit 1973), the Court of Appeals for the First Circuit mandated that the Registrar must produce a statement of his/her reasons for revoking a motorist's drivers license under Sec. 22(a). Although Raper involved the Registrar's failure to provide a statement of reasons with respect to his denial of a license application, the Court of Appeals enunciated that the Fourteenth Amendment's due process provisions applied equally to license suspension proceedings. See *Lucey* at p. 752. It is also obvious that the principles set forth in *Raper* are equally applicable to reissuances of licenses under Sec. 22(a).

The First Circuit in *Raper* set forth the following concerning the Registrar's obligations under the due process clause:

> Raper's strong interest and adequate notice of the specific reasons behind the Registrar's decision is clear. It is elementary

3

> that due process within administrative procedures requires the opportunity to be heard 'at a meaningful time and a meaningful manner', *Goldberg v. Kelly*, supra 397 U.S. at 267. . . . . the government has not advanced any appropriate interest that would be served by its refusal to detail reasons . . . . . moreover by compelling the Registrar to indicate a specific basis for his action, we minimize the possibility of arbitrary or unreasoned administrative judgment. A statement of reasons may thus serve as an important safeguard against unwarranted abuse of the Registrar's statutory discretion in approving or disapproving license applications.

The First Circuit's opinion in *Raper* as well as in *Wall v. King*, 206 F.2d 878 (First Circuit 1952), cert denied, 346 U.S. 915 (1953), spells out the Registrar's obligations under the due process provisions of the Fourteenth Amendment. The current Registrar had constructive knowledge, if not actual knowledge, of these decisions, and her obligations under the Fourteenth Amendment. The failure of the Registrar to produce the subject documents or to set forth her reasons for refusing to reissue Hunt's license pursuant to Sec. 22(a), and then only producing them after Hunt filed an action in the federal district court, is a willful violation of the due process provisions of the Fourteenth Amendment.

2. <u>THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION EVEN THOUGH THE REGISTRAR HAS PRODUCED 63 PAGES OF EXHIBITS TO SUPPORT HER POSITION.</u>

Hunt maintains that the Registrar's transgressions with respect to his due process rights are not mooted or cured by the Registrar's production on November 8, 2004 of sixty-three pages of exhibits which were intended to justify her initial revocation of his license on July 14, 2003 and her continuing refusal to

4

reissue his driver's license. Hunt unquestionably was entitled to a meaningful hearing on September 24, 2004 at the Lawrence branch of the Registry of Motor Vehicles and the sixty-three pages of exhibits should have been produced by the Registrar at this hearing so that Hunt would have had an opportunity to respond. Accordingly, Hunt submits that this Court should order the Registrar to reissue his driver's license forthwith, and order the Registrar to grant him a hearing which comports with due process in the event the Registrar desires to further suspend his license pursuant to Sec. 22(a) on the basis of the 63 pages of exhibits.

3. <u>THE 63 PAGES OF EXHIBITS DO NOT SUPPORT THE REGISTRAR'S INITIAL SUSPENSION UNDER SEC. 22(a).</u>

Hunt does not contest, in this proceeding, the initial revocation of his driver's license by the Registrar pursuant to Sec. 22(a). Rather, he contests the Registrar's refusal as of September 24, 2004 to reissue his license pursuant to the provisions of Sec. 22(a). Notwithstanding, Hunt would like to call to the Court's attention that the initial notice, Registrar's Exhibit G, sets forth that Hunt's license was revoked "for an indefinite period for IMMEDIATE THREAT". It then sets forth that a description of the offenses were as follows: "Offense Date - 07/08/03; Offense/Location - IMMEDIATE THREAT/ARLINGTON". Hunt submits that this notification does not satisfy the elementary tenants of due process. The notice does, of course, refer to the location as being in Arlington, Massachusetts, and the date of offense being July 8, 2003. However, it does not set forth the

5

Registrar's basis, assuming Hunt did commit the offenses charged by the Arlington Police, for concluding that Hunt's "continuing operation" would "be so seriously improper as to constitute an immediate threat to the public safety". Quite obviously, many motorists are charged with driving under the influence and driving to endanger, and their licenses are not revoked by the Registrar pursuant to Sec. 22(a). This is particularly true where no personal injury or property damage are involved.

The question that arises is whether the Registrar's notice in suspending Hunt's license pursuant to Sec. 22(a) was sufficient to satisfy the due process requirements of the Fourteenth Amendment. Here again, the First Circuit has set forth that the failure of the Registrar "to publish existing policies and regulations" constitutes an infringement of a motorist's due process rights. The First Circuit also mandated in *Raper* that due process required the Board of Appeal On Motor Vehicle Liability Policies and Bonds (hereinafter "Board of Appeal") publish and inform motorists of "current substantive criteria which will govern the Board's decisions". These same tests must be equally applicable to the Registrar's decisions. Since the First Circuit's decision in *Raper,* the Registrar and the Board of Appeal have published some regulations. These are codified in the Code of Massachusetts Regulations, 540 CMR 9.01-05. None of these regulations, however, address the First Circuit's requirement with respect to "current substantive criteria," or to "existing policies and regulations". At a very

6

minimum, the Registrar should have set forth the basis of her actions in revoking Hunt's license beyond her recitation that Hunt was charged with several motor vehicle infractions.

4. <u>THE 63 PAGES OF EXHIBITS DO NOT SUPPORT THE REGISTRAR'S REFUSAL TO REISSUE HUNT'S LICENSE PURSUANT TO SEC. 22(a)</u>

Hunt's Verified Complaint is directed solely to the Registrar's action in refusing to reissue his driver's license as of September 24, 2004. Sec. 22(a) contemplates that the Registrar will conduct a hearing and perform an investigation before reissuing a license revoked pursuant to the IMMEDIATE THREAT provisions of the statute. The Supreme Judicial Court has so construed Sec. 22(a). See *Wall v. Registrar of Motor Vehicles*, 329 Mass. 70, at p.73 (1952).   Since the date of the Registrar's initial revocation on July 12, 2003, Registrar's Exhibit G, the 63 pages of exhibits show the following events have transpired. Hunt did not request a hearing or contest the initial Sec. 22(a) suspension by the Registrar. See Registrar's Exhibit H.  On July 14, 2003, the Registrar suspended Hunt's license for one hundred and eighty days for refusing to take the breathalyzer, although it is undisputed that the police measured his blood alcohol level with a portable blood test analyzer on site at the time he was arrested and that Hunt's blood alcohol level was below the point from which any presumption would arise that he was driving under the influence.  Hunt did not contest this suspension. See Registrar's Exhibit B.  On March 15, 2004, Hunt was charged with several

7

offenses arising out of his arrest on July 8, 2003. Hunt was found guilty of refusing to obey a police officer, driving to endanger, and being an unlicensed operator. See Registrar's Exhibit B, p. 2. On April 5, 2004, the Registrar revoked Hunt's license for sixty days for being convicted of driving to endanger. See Registrar's Exhibit B, p. 2. At no time did Hunt contest this revocation. The Registrar's notice sets forth that Hunt's license/right to operate was revoked for sixty days for driving to endanger. At the same time, it shows that Hunt's Sec. 22(a) suspension continued to be indefinite. See Registrar's Exhibit B. The two suspensions ran simultaneously.

On April 2, 2004, the Registrar notified Hunt that she intended to suspend his license for ninety days for being convicted of five surchargeable offenses between January 28, 2002 and March 15, 2004. The Registrar also indicated that she would not suspend Hunt's license for the ninety day period if he attended and passed a Driver Retraining Program. Hunt attended the Driver Retraining Program and, as such, the Registrar did not take any further action against him. See Exhibit B.

By the time Hunt had requested a hearing from the Registrar at the Lawrence Branch of the Registry of Motor Vehicles on September 24, 2004, all the specific suspensions of his license had long been fulfilled. At the September 24, 2004 hearing, Hunt was advised by the hearing officer that the Registrar's refusal to

reissue his license pursuant to Sec. 22(a) was due to his driving a motorcycle after sunset and before sunrise, and with a passenger, a violation of Ch. 90 Sec. 8B since Hunt only had a learner's permit for driving a motorcycle. See ¶ 10 of Hunt's Verified Complaint.  At this hearing Hunt's counsel specifically inquired as to what the immediate threat was as of September 24, 2004 and for a statement of reasons to support the Registrar's continuing indefinite suspension. Hunt also reiterated his request in writing by way of the undersigned counsel's September 30, 2004 letter to the Registrar.  See Exhibit A attached to Hunt's Verified Complaint.  Hunt maintains that there are no facts or reasons set forth in the Registrar's 63 pages of exhibits to justify the Registrar's refusal to reissue Hunt's license excepting only those rendered by the Board of Appeal on July 22, 2004.  For the reasons set forth below, Hunt submits that the Registrar's reliance on the findings and statement of reasons of the Board of Appeal is misplaced, to say the least.

5. <u>THE REGISTRAR'S RELIANCE ON THE BOARD OF APPEALS' DECISION ON JULY 22, 2004 IS WITHOUT ANY REDEEMING MERIT</u>

Although the hearing officer never cited a decision by the Board of Appeal on July 22, 2004 (described hereinafter) as a basis for the Registrar's refusal to reissue of Hunt's license at the Registry hearing in Lawrence on September 24, 2004, the Registrar in her Opposition asserts that the July 22, 2004 decision by the Board of Appeal is controlling as it serves as such a basis.  On pages 3-5 of her Opposition, the Registrar sets forth the background for the July 22, 2004

hearing before the Board of Appeal.  More particularly, the Registrar maintains that Hunt was notified on July 14, 2003 of her action in revoking his license under Sec. 22(a).  The Registrar correctly notes that her notice states that her revocation "stemmed from the July 8, 2003 incident in Arlington".  See Opposition at p. 3.  The Registrar also calls to this Court's attention that the notice advised Hunt that he could request a hearing at the Registry, but that Hunt did not request such a hearing.  There is no dispute about these facts as they appear on the face of the Registrar's Exhibit G.  However, it should also be noted that Exhibit G sets forth that Hunt, if he felt aggrieved of the decision of the Registrar in revoking his license indefinitely pursuant to Sec. 22(a), could "within ten days of the effective date of the Registrar's order appeal to the Board of Appeal on Motor Vehicle Liability, Policies and Bonds."  This language tracks the statutory language in Ch. 90, Sec. 28 which provides that any person aggrieved of a ruling or decision by the Registrar, may within ten days thereafter appeal such a ruling or decision to the Board of Appeal.  Hunt never filed any such appeal within ten day.

On April 15, 2004, more than six months after the Registrar's Sec. 22(a) revocation, Hunt, pro se, requested a hearing before the Board of Appeal.  See Registrar's Exhibit I.  The appeal form, Exhibit I, cites the reason for the appeal as being the Registrar's action in on July 14, 2003 in suspending his driver's license for "IMMEDIATE THREAT".  Quite clearly, Hunt's appeal from the action

of the Registrar on July 14, 2003 was entirely outside the purview of the statutory provisions governing appeals within ten days pursuant to Ch. 90, Sec. 28. In short, the Board of Appeals never had any jurisdiction to review the Registrar's decision on July 14, 2003. Even if this were not the case, the Board's decision "affirmed" the July 14, 2003 action in revoking Hunt's license pursuant to Sec. 22(a). As noted above, Hunt's complaint is directed to The Registrar's refusal to reissue his license on September 24, 2004. As such, the Board's decision is irrelevant.

Quite apart from this consideration, it is clear that the Board of Appeal violated Hunt's due process rights as it failed to set forth any statement of reasons to justify its decision. Indeed, the hearing was held on July 22, 2004, and it is on that very date that it rendered its decision. See Registrar's Exhibit K. The finding and order itself, Exhibit K, sets forth that the Board voted to affirm the July 14, 2003, Sec. 22(a) revocation by the Registrar of Motor Vehicles. It set forth no reasons at all to justify its decision, all in violation of the dictates of the First Circuit's opinions in Wall v. King, supra and Raper v. Lucey, supra.

Notwithstanding, on November 4, 2004, approximately seven days after the Registrar received a fax copy of Hunt's Verified Complaint, the Board of Appeals "generated" a statement of reasons to justify their July 22, 2004 decision. See Registrar's Exhibit M. The Registrar, in her Opposition, justifies the Board of

11

Appeal's failure to set forth its statement of reasons previously by asserting, at p.4 n.3, that the Board only issues a statement of reasons "if its findings and order is challenged". In other words, the Registrar justifies her position before this Court by setting forth that the Board and the Registrar only comply with the due process requirements of the Fourteenth Amendment when and if they are sued in a federal district court. Under these circumstances, this Court should not give any consideration whatsoever to the Board of Appeal statement of reasons for its decision, Registrar's Exhibit M, and, as such, all of the Registrar's arguments about issue preclusion and res judicata are inapplicable even if the Registrar's initial suspension on July 12, 2003 was an issue in this litigation.

Notwithstanding what has been set forth above, the Registrar has asserted at p. 5 of her Opposition that the Board of Appeal found that Hunt's "long history of motor vehicle violations" and his "problem with alcohol" justified the Registrar's IMMEDIATE TREAT revocation pursuant to Sec. 22(a). In the Registrar's Opposition, at pp. 1-2, the Registrar references Hunt's driving record for the last 11 years. Of course the Registrar never asserted this basis in her notice to Hunt with respect to her initial revocation pursuant to Sec. 22(a), nor did the hearing officer ever make such an assertion at the September 24, 2004 hearing at the Lawrence branch of Registry of Motor Vehicles. Notwithstanding, the Registrar sets forth that Hunt has committed eighteen criminal and civil violations of Massachusetts' motor vehicle laws over an eleven year period. The last five of

these criminal/civil violations occurred between December 2001 and July 2003. See Registrar's Exhibit B. As a result, the Registrar advised Hunt on April 12, 2004 that she would suspend his license for 90 days unless he attended and passed a Driver Retraining Program. Hunt did take and passed the Program, and as such, the Registrar took no further action. See Registrar's Exhibit B. Thus it follows that, as of this date, Hunt's "driving record" is not a basis of the Registrar's indefinite suspension of Hunt's license. Perhaps it is appropriate to add that the Registrar has not asserted that Hunt violated any of Massachusetts' habitual traffic offender statutes. Indeed, Sec. 22F contains an elaborate pattern to define habitual traffic offenders and prescribes penalties including suspensions up to four years for habitual traffic offenders. Hunt has not been charged under this statute because he has not violated it. As such, he is not a habitual traffic offender. Accordingly, the Registrar's assertion, for the first time, that Hunt's driving record over an eleven year should serve as a basis to justify her refusal to reissue Hunt's license under Sec. 22(a) is totally inappropriate.

The Registrar also did not set forth in her revocation notice to Hunt of July 14, 2003, Registrar's Exhibit G, copy attached, that Hunt had a "problem with alcohol". If the Registrar intended to utilize this issue as well as Hunt's "long history of motor vehicle violations" as a basis for her immediate threat revocation pursuant to Sec. 22(a), then she should have included this in her notice to Hunt. However, she could not do this as Sec. 22(a) makes clear that the <u>only basis</u> that

the Registrar may suspend or revoke pursuant to Sec. 22(a) is that a motorist "has committed a violation of motor vehicle laws of a nature which would give the Registrar reason to believe the continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety". Clearly, Sec. 22(a) limits the Registrar's power to revoke to violations of Massachusetts' motor vehicle laws. Whether one has a drinking problem, or not, is not a basis under Sec. 22(a) for the Registrar to revoke. Whether one has along history of motor vehicle violations is also not a basis for the Registrar to revoke under Sec. 22(a).

6.  **THE REGISTRAR'S REMAINING OBJECTIONS IN HER OPPOSITION ARE NOT APPLICABLE**

The Registrar has asserted that Hunt should have appealed the July 22, 2004 decision by the Board of Appeal to the Superior Court in Massachusetts. As Hunt as set forth above, that decision is totally irrelevant to the issue that Hunt raises in his Verified Petition, and, as such, the Registrar's objection, even if it had merit, is inapplicable. It does not have any merit because there is no obligation for Hunt to exhaust his judicial remedies before bringing a 1983 action in the federal district court. The Registrar has also asserted that Hunt should have appealed the September 24, 2004 decision by the Registrar to the Board of Appeal pursuant to Ch. 90 Sec. 28. Quite obviously, such an appeal would have been an exercise in futility. Further, it is clear from the First Circuit's opinion in

*Raper,* supra, that Hunt had no obligation to exhaust his "available administrative remedies".  See *Raper,* supra at fn. 3.

Lastly, the Registrar has asserted that the Commonwealth's interest in protecting its citizens from dangerous drivers must be balanced against Hunt's interest in obtaining a restraining order and preliminary injunction.  In this connection, it should be observed that the police report indicated that Hunt himself expressed remorse when he was stopped by the Arlington Police and arrested.  See Hunt's Exhibit D at pp. 2-3: "I don't know what I was thinking.  I'm so mad at myself."  Further, as noted above, Hunt has taken a Driver Retraining Program given by the National Safety Council.  Additionally, he has assured this Court in his affidavit that if this Court grants his motion for a restraining order and his driver's license is reissued, he will abide by all Massachusetts' motor vehicle laws and regulations.  See Hunt's Exhibit C.  He only seeks to have his driver's license reinstated, not his motorcycle learner's permit.

## CONCLUSION

There is only one issue before this Court, and that is whether the Registrar has satisfied the due process requirements of the Fourteenth Amendment in refusing to reissue Hunt's driver's license on September 24, 2004, fourteen months after it revoked his license pursuant to Sec. 22(a).  Hunt maintains that due process required a meaningful hearing, and not a meaningless one.  Accordingly, Hunt

asks this Court to issue an appropriate restraining order and injunction, and to further order the Registrar to reissue his driver's license.

                                  Christopher Hunt
                                  by his attorney

Date:  November 15, 2004

Robert W. Hagopian, Esquire
P.O. Box 282
Belmont, MA 02478
BBO# 216580